## JOSEPH WEISINGER *v.* BANK OF GALLATIN.

1. CONTRACT. *Parol evidence. Bank. Deposit ticket.* A deposit ticket. given to a bank is not that character of instrument which parol evidence may not be introduced to contradict or vary its terms, but is rather a memorandum.

2. SAME. *Deposit ticket. Charge of court.* To charge that a deposit ticket "is a strong fact" of the amount deposited in the bank, is not equivalent to stating that it was *prima facie* evidence of the fact.

FROM SUMNER.

Appeal in error from the Law Court of Sumner county. JO C. GUILD, J.

C. R. HEAD for Weisinger.

J. J. VERTREES for Bank.

FREEMAN, J., delivered the opinion of the court.

This suit was commenced to recover, as for money had and received, what is assumed to be a balance due plaintiff, of money deposited by him in the bank. The substantial facts on which the case turns are as follows: Plaintiff claims to have deposited with the bank $845, and the bank insists he deposited only $745. The plaintiff proved by himself, his son, and Mr. Lee Head, facts tending to show the sum to be as he claimed. The father and son were first introduced, and showed substantially that the father sent the money by his son, from his home some twelve

miles in the country, to be deposited in the bank., That they both counted the money at the time at home, and found there was $845. The son was going to Mr. Head's, a brother-in-law, to stay that night, being Saturday. On next morning, he went into Gallatin with Mr. Head, and seeing the cashier standing in the door of the bank, went to the bank, and requested him to receive the money, which he did. Plaintiff claims, as we have said, there was $845, and so the father and son swear. The money was rolled, up and enclosed in paper, and the son swears not opened until deposited. When the son was being examined, and had deposed to the above facts, he was asked if he signed a deposit ticket at the time, which he answered in the affirmative, and the following ticket was produced, which he acknowledged to have been the one signed by him. Thereupon the defendant objected to the admission of all parol or verbal testimony of the amount of the deposit, which objection the court overruled and the testimony was allowed to go to the jury.

The ticket is as follows:

FIRST NATIONAL BANK OF GALLATIN.
Deposit 12, 27, 1875.
Checks.
Currency........:.................................................$ 745
Account of Joseph Weisinger, Sr.

The defendant introduced very strong testimony tending to show this was the true amount—such as that the cash balance of Monday, into which that day's business went, and the books correspond with this amount, etc. We need not discuss the weight of the testi-

mony, as under our rule, there is clearly testimony
on either side on which the verdict of the jury might
well have stood, and this is conceded by the counsel
of the bank.    The jury found a verdict for the plain-
tiff, but gave no interest, this being within their
discretion.

The case turns then on the question in the main,
whether the verbal testimony admitted to show the
true amount of the deposit, and the ruling of the
court that the ticket was not conclusive on this ques-
tion was correct or not? ·

On the part of the defendant below the axiomatic
rule is invoked, that parol testimony cannot be ad-
mitted to add to a written agreement or contract—or
as it is sometimes shortly expressed, to add to or
alter a writing.

On the other hand, it is contended this case is not
within the rule at all, and even to the extent it ap-
pears to be so, is within exceptions well established,
and therefore the evidence was properly admitted.

The principle so often invoked is thus explained
by Mr. Greenleaf, Ev., vol. 1, ch. 15: Title, "Ad-
missibility of parol or verbal evidence to affect that
which is written." He says: "By *written evidence,* in
this place, is meant not everything which is in writing,
but that only which is of a documentary and more
solemn nature, containing the terms of a contract be-
tween the parties, and designed to be the repository
and evidence of the final intentions.    Where parties
have deliberately put their engagements into writing,
in such terms as impart a legal obligation, without

any uncertainty as . to the object or extent of their engagement, it is conclusively presumed that the *whole* engagement of the parties, and the extent and manner of their undertaking was reduced to writing; and all oral testimony of a previous *colloquium* between the parties or of conversations or declarations at the time when it was completed, or afterwards, as would tend, in many instances to substitute a new and different contract for the one agreed upon, to the prejudice, possibly of one of the parties, is rejected.    In other words, as the rule is more briefly expressed, parol contemporaneous evidence is inadmissible, to contradict or vary the terms of a valid written instrument": Section 275.

The ticket above set forth does not contain the elements so fully stated in the section cited, discriptive of the character of instrument to which the rule invoked has application.    It is not an engagement in writing, nor on its face does it contain the contract of the parties deliberately agreed to.    It is not a contract in terms, nor was it intended to be.    It more nearly corresponds to the meaning of the word memorandum, "a record of something which it is desired to remember—a note to help the memory": Webster's Dictionary, Memorandum.

The facts given in the record, as to its use in this case, lead to the same conclusion.    It was placed on a book in the bank, as a guide to making the proper entry on the books next day.    It was a substitute for the memory, or help—a like memorandum made by the cashier on a loose sheet of paper, would

have served the same purpose, to guide to the proper
·entry, and would have equally helped the memory.
That it is not the contract of the bank on which
its liability depends, is evident from the fact, that it
is not signed by any officer of the bank, but on the
contrary, by the plaintiff, the depositor. The receipt
of the money is the fact, from which the law implies
the contract of the bank, which is substantially, that
the bank will be responsible for the sum deposited,
·and pay the same amount of money when so ordered
by the depositor—this usually being done on his check.
It is then a memorandum signed by the depositor in-
dicating the amount he desired to deposit, and to
whose credit the deposit should be entered. The sig-
·nature of the party, by his agent in this case, however,
gives this paper probably more the likeness to a re-
·ceipt for money, though it is not the same thing in
form. In the case of .a written receipt, it would
·acknowledge the reception of so many dollars, and be
signed by the party receiving it. In this case, it is
·a statement of the sum to be deposited, and assumed
to be received by the bank. It is a less formal and
·complete paper than a receipt, yet it has always been
·held, that so far as the receipt goes to show, or ac-
knowledge payment or delivery, it is merely *prima
facie* evidence of the fact, and not conclusive, and
therefore, the fact which *it* recites may be contradicted
·by oral testimony: Greenl. on Ev., vol. 1, sec. 305.

In this section it is added, that a receipt may also
contain a contract to do something in relation to the
·thing received or delivered, and as to this it stands

on the footing of all other contracts in writing, and cannot be contradicted or varied by parol. Thus, for example, he says, a bill of lading, which partakes of both of these characters, may be contradicted and explained in its recitals, that the goods were in good order and well conditioned, by showing that their internal order and condition was bad, and in like manner any other *fact* which it erroneously recites, but in other respects *it* is to be treated like other written contracts. And so in Note, sec. 305 *a,* it is said, the rule that parol evidence is not admissible to vary or contradict a written contract, is not applicable to mere *bills of parcels* made in the usual form, in which nothing appears but the name of the vendor and vendee, the article purchased, with the prices affixed and a receipt of payment by the vendor, certainly both of these papers are far more formal and complete than the ticket now in question. Why should not the like principle apply?

The distinction, between the nature of the writings to which the rule excluding parol evidence is applicable, is well seen, however, in the case of the receipt, containing also a contract. The writing is the same, and signed by the same party, yet one part of this writing is not within the rule, to-wit, the receipt, while the other is—that the *contract,* engagements or obligations to do or not to do something, are within the rule, while less solemn writings, or parts of the same writing, are exempt from it. These make only a "*prima facie* case, but are not conclusive, and the facts recited may be contradicted by oral testimony."

The able and ingenious argument of counsel for the bank, rests mainly on the assumption, that this ticket is a contract, *the* contract of the parties. We think it is not of that dignity, as we have shown. In fact, confining ourselves to the face of it, it would impart a deposit, with the · First National Bank of Gallatin, conceded to have been a former, or at least different body from defendant, the defendant probably taking its place of business, and using the blanks left by that institution.

In reply to the argument so earnestly pressed on us, that banks doing a large business are compelled to rely on these deposit tickets for their guidance, and it would be impossible to remember all transactions of the day, we may say, that a mistake, such as is here alleged, is not likely often to occur at all in such business. That the bank has the weight of · the testimony of its receiving officer, to aid in sustaining the *prima facie* case made by the ticket, for we hold it amounts to that, together with the contemporaneous entries on its books, and so with all these. No bank is likely to suffer to any great extent by the operation of the rule. We think the established principles to which we have referred cover this case, and they have been so often approved by this and other courts, as well as text writers, that we would not be authorized to set them aside, even if we thought them unsound in policy, Like all rules of law, when left to be applied by juries, this may, in some cases, work injustice, but this furnishes no reason why the rule should be disregarded by this court.

So much for this question, as presented in argument, and on which the case has been mainly, if not entirely rested.

On examination of the charge of his Honor, we find it to be as follows: "If the agent of plaintiff signed a paper usually used by the bank, showing the deposit that would be a strong fact showing the amount deposited, yet if the party signing it did not read or know the contents, I think the matter might be explained, provided it is done to the satisfaction of the jury." And then he goes on to simply submit the whole case on the paper and proof to the jury, and tells them to decide on the preponderance of the testimony, the plaintiff having the affirmative.

Now, this does not state the law correctly, "a strong fact" is not the same thing as a *prima facie* case, that is a case made out, till the contrary is proven, and in the case of even an informal writing, to be clearly met and explained, and its evidence overturned by the explanatory proof to the satisfaction of the court or jury, as the one or the other may be called on to decide the question—in this case the jury. This error, we think, might well have misled the jury, and certainly on this vital point, the law as stated, is not the law as we have laid it down in this opinion.

For this error in the charge of his Honor, the verdict must be reversed and the case remanded—it not being a failure to state all the law, when a request would be necessary to put him in error, but

22—vol. 10.

what is stated is not the law of the case or applicable to the facts.

Reverse and remand.